MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2026 ME 85
Docket:        Sag-25-553
Submitted
  On Briefs:   June 16, 2026
Decided:       August 13, 2026

Panel:         MEAD, LAWRENCE, DOUGLAS, and TAUB, JJ., and HORTON, A.R.J.

JUANITA C. CLARK

v.

TOWN OF PHIPPSBURG

DOUGLAS, J.

[¶1]  Juanita C. Clark appeals from a judgment of the Superior Court (Sagadahoc County, *Billings, J.*) dismissing her complaint for review of the Town of Phippsburg Board of Selectmen's actions in connection with a neighboring property owner's alleged violations of a cease-and-desist order and the Town's land use ordinance.  Because we agree with Clark that there is government action subject to review, we vacate the judgment of dismissal and remand the matter for further proceedings.

## I.  BACKGROUND

[¶2]  The facts are drawn from our opinion summarizing previous proceedings regarding Clark's dispute with the neighbor and the Town, *see Clark v. Town of Phippsburg*, 2025 ME 25, 334 A.3d 623, and from Clark's

complaint in the present matter. Because we are reviewing a motion to dismiss, we treat the complaint's allegations as admitted and view the allegations in the light most favorable to Clark. *See 20 Thames St. LLC v. Ocean State Job Lot of Me. 2017 LLC*, 2021 ME 33, ¶ 14, 252 A.3d 516.

[¶3] In September 2020, Clark, her husband, and others complained to the Town's Code Enforcement Officer (CEO) about a nuisance on the neighboring property of Dan Gurney, who was selling firewood at the property. *Clark*, 2025 ME 25, ¶ 2, 334 A.3d 623. The matter proceeded from the CEO to the Town's Board of Appeals, which found that Gurney's business constituted a nuisance and violated the Town's land use ordinance. *Id.* Thereafter, the Board of Selectmen[1] issued its own findings that Gurney had abated the nuisance. *Id.* On judicial review, the Superior Court affirmed that decision. *Id.*

[¶4] Clark and her husband appealed to us, and we vacated the Superior Court's judgment in an opinion issued on March 11, 2025. *Id.* ¶¶ 2-3. We reasoned that the Board had exceeded its authority by determining whether the nuisance was abated instead of determining, in accordance with the land use ordinance, whether to enforce the ordinance through a consent agreement or court action against Gurney. *Id.* ¶¶ 3, 35-36, 38. We remanded for the Board

---

[1] Although two of the Town's boards were involved in this matter, we use "Board" in this opinion to refer to the Board of Selectmen.

to make that determination without the participation of its chair, whose appearance of bias during the proceedings violated the Clarks' due process rights. *Id.* ¶¶ 37-38.

[¶5]  From April 21, 2025, through May 21, 2025, the Board met four times without scheduling a public hearing.  The May 21, 2025, agenda included as "New Business" a discussion of our remand order.  The chair recused herself, and the matter proceeded with the other members.  One member stated that she had met with Gurney and come to an agreement but did not share the terms of that agreement with Clark and her husband.  Gurney's representative—his brother—indicated that Gurney was going to reach out to the other members who were not recused to reach a satisfactory resolution.  Gurney's brother then testified about Gurney's wood operation.  The Clarks objected to the ex parte nature of the negotiations with Gurney, but one member indicated that the Town's attorney had said that it was permitted.  The Board tabled the matter.

[¶6]  On May 28, 2025, the matter appeared on the Board's agenda as "Unfinished Business."  The Clarks appeared, but Gurney did not.  One member moved to enter into a consent agreement with Gurney to be signed by June 30. Another seconded the motion.  The Board allowed no discussion or public comment before voting unanimously to enter into the agreement.  Clark

4

interjected, and a Board member stated that the matter would not be discussed further.

[¶7]  The CEO served Gurney with a cease-and-desist order, requiring him to immediately stop all activity associated with his wood-selling business. On or about June 26, 2025, Clark delivered a formal complaint to the CEO in which she stated that Gurney was continuing to operate his business, in violation of the land use ordinance and the cease-and-desist order.  On July 2, 2025, Clark emailed the CEO a video showing Gurney's operations.  The CEO replied to Clark that day, stating in part:

> I have looked into the complaint and based on the video of Mr. Gurney actively working the wood at his Fuller Mtn residence *I have forwarded that email and my opinion to the Selectmen that he is violating the order and requesting th[at] they take legal action to enforce the order*.

(Emphasis added.)[2]

---

[2]  The CEO's email to the Board, which Clark submitted to the court along with her opposition to the motion to dismiss, stated:

> Forwarding this follow up on the complaint that Mr. Gurney is not abiding by the cease and desist order, it is clear to me by the video that is date and time stamped today [July 2, 2025] that Mr. Gurney is continuing to operate his wood business in some form.  The cease and desist upon remand from the Law Court was to stop any and all activities until proper permits are obtained.
>
> So this is your matter now as this has already been through the court system and it is time that the town take legal action to enforce the cease and desist notice.

[¶8]  The Board met on July 9, 2025, and discussed the recommendation as well as statements by Gurney and his brother, who were present at the meeting.  Clark was not present because she had no knowledge that the matter would be discussed.  The matter was tabled so that the Board could meet with counsel.  On the way out, one Board member said to Gurney, "Dan, don't worry.  I'm still with you."  On July 11, 2025, Clark requested that member's recusal on this basis.

[¶9]  The Board met on July 23, 2025, with the matter on the agenda as "Unfinished Business."  Clark again requested that the member who had spoken to Gurney after the last meeting recuse himself; the member refused to do so.  All participating Board members indicated that they had reviewed the video and spoken with Gurney and his brother.  The Board unanimously passed a motion to find that there had been no violation of the order and to determine that no action would be taken.

[¶10]  On July 25, the Clarks received a letter from the CEO reporting the Town's decision.[3]  On July 28, the Clarks requested formal findings of fact and conclusions of law from the Board.

---

[3]  The letter, which the Town attached to its motion to dismiss, stated in part, "The Town has reviewed all the evidence and does not believe it can prove that Mr. Gurney is violating the cease and desist order."

6

[¶11]  On July 30, the Board went into executive session to consult with counsel.  Following the executive session, acting unanimously, the Board went on the record to "clarify" that on July 23, it had merely indicated an opinion that was not legally binding, and to indicate that the CEO's decision was final.

[¶12]  On August 11, 2025, Clark filed in the Superior Court a complaint for review of final government action against the Town, *see* M.R. Civ. P. 80B, challenging as *ultra vires* the Board's July 23, 2025, finding that Gurney had not violated the order to cease and desist activities and alleging that her right of due process had been violated because the Board improperly made de novo findings that there had been no violation, its members engaged in ex parte negotiations with Gurney, and the final decision was contrary to our earlier decision directing legal action if Gurney did not cease and desist operations.

[¶13]  The Town moved to dismiss the complaint on the ground that the complaint failed to identify a reviewable decision because the Board lacked the authority to make a de novo finding whether Gurney had violated the cease-and-desist order, and the CEO had to find the facts, which he did on July 25, 2025.  The Town argued that the July 30, 2025, decision, indicating that the Board was not deciding whether there had been a violation, had rendered the CEO's decision final.

[¶14] In opposition to the motion to dismiss, Clark argued that the CEO's letter demonstrated that the Town, meaning the Board and not the CEO himself, had determined that there was insufficient evidence of a violation. Clark alleged that the Town erred in not instituting court action against Gurney for the violation of the cease-and-desist order.

[¶15] On November 12, 2025, the court granted the Town's motion to dismiss, concluding that on July 30, the Board had reversed its July 23 decision, thereby leaving no final government action by the Board for the court to review. Clark timely appealed. *See* M.R. App. P. 2B(c)(1). We issued an order directing Clark to show cause why the appeal should not be dismissed as moot given the decision by the Board to rescind its finding that there was no violation of the cease-and-desist order. After Clark filed a memorandum responding to the show-cause order, we entered an order allowing the appeal to proceed.

## II. DISCUSSION

[¶16] A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." M.R. Civ. P. 12(b)(6). "A court deciding a motion to dismiss does not adjudicate facts but must evaluate the complaint's allegations. Consequently, when we review a judgment granting a motion to dismiss, we consider the facts stated in the complaint as if they were admitted

and examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *20 Thames St. LLC*, 2021 ME 33, ¶ 14, 252 A.3d 516 (citation and quotation marks omitted). There is a "general preference . . . for cases to be resolved on the merits," and a motion to dismiss should be granted only "when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.* (quotation marks omitted). A party may obtain judicial review of a government action "that fully decides and disposes of the whole cause leaving no further questions for . . . future consideration and judgment" by the administrative body. *Bryant v. Town of Camden*, 2016 ME 27, ¶ 12, 132 A.3d 1183.

[¶17] Here, Clark has alleged that the Board improperly refused to take legal action based on the CEO's July 2 letter reporting a violation and the accompanying video.[4] *See Clark*, 2025 ME 25, ¶¶ 34-35, 38, 334 A.3d 623. Its

---

[4] Clark has not sought direct judicial review of the CEO's decision; we have already made clear that "[a] decision by a code enforcement officer as to whether a violation exists is typically, and specifically in Phippsburg, reviewable by the board of appeals," *Clark*, 2025 ME 25, ¶ 31, 334 A.3d 623, meaning that the Superior Court has no authority to review the CEO's decision directly, *see Bryant*, 2016 ME 27, ¶ 10, 132 A.3d 1183 (requiring the exhaustion of administrative remedies before a party may seek judicial review of governmental action). And although a code enforcement officer—or a select board acting in the place of a recused code enforcement officer—has discretion in determining "whether to bring an enforcement action for an ordinance violation," *Raposa v. Town of York*, 2019 ME 29, ¶¶ 7, 11 & n.4, 204 A.3d 129, the case here is in a different posture. Enforcement

purported decision on July 23, 2025, not to take any enforcement action was based on findings made following each participating member's review of the video and off-the-record discussion with Gurney. The Superior Court acknowledged that "the Select Board's actions on July 23, 2025 may have been unlawful" but concluded that the Board "reversed course on July 30, 2025, leaving no governmental action in place for review by this court."

[¶18] Clark, by alleging that the Board unlawfully decided not to take court action against Gurney for violating the cease-and-desist order, has presented a reviewable question. Clark's complaint asserts that irregularities in the Board's actions at *both* the July 23 and July 30, 2025, meetings violated her due process rights. Because Clark has stated a cognizable claim for review of final government action, *see* M.R. Civ. P. 80B, we vacate the dismissal and remand for further proceedings on Clark's complaint.

The entry is:

> Judgment of dismissal vacated. Remanded for further proceedings.

---

action was already undertaken, *see Clark*, 2025 ME 25, ¶ 2, 334 A.3d 623, and it resulted in a cease-and-desist order. Clark now seeks review of an alleged refusal by Board to take legal action upon notice of a violation of that order.

Juanita C. Clark, appellant pro se

Jessica L. Maher, Esq., Jessica Maher Law, LLC, Brunswick, for appellee Town of Phippsburg

Sagadahoc County Superior Court docket number AP-2025-4
FOR CLERK REFERENCE ONLY